UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER MICHAEL FOX, <br><br> Defendant. | CR. 16-50077-01-JLV <br><br><br> ORDER |

## INTRODUCTION

Defendant Christopher Michael Fox, appearing *pro se*, filed a motion for compassionate release.  (Docket 75).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Fox's motion.  (Dockets 77 and 79).  For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-6

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

[1]See https://www.sdd.uscourts.gov/socraa ("SO 20-06").

the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1).  Under

the order, the FPD is automatically "appointed to represent all defendants in

criminal cases: (a) who previously were determined to be entitled to

appointment of counsel or who are now indigent; and (b) who may be eligible to

seek compassionate release under the First Step Act." Id. at ¶ 1.  The initial

step for the FPD is to

> communicate a recommendation to inmates interested in
> compassionate release that they immediately submit requests for
> compassionate release to the warden of the facility in which they are
> detained, if they have not done so already.  These communications
> will include the recommendation that the prisoner describe their
> proposed release plan.

Id. at ¶ 2.

By the standing order, the FPD and the United States Attorney for the

District of South Dakota are "to place [the defendant] into one of four

categories[.]" Id. at p. 2 ¶ 4.  Those categories are:

a. High Priority Cases where there exists some combination of:
   (i) medical issues that correspond to the categories outlined in the
   commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk
   factors in the inmate's medical history; and/or (iii) imprisonment in
   a federal facility known to have a serious COVID-19 outbreak in its
   population. . . .

b. Intermediate Priority Cases where identified medical issues and/or
   COVID-19 risk factors and/or institutional concerns are less
   extreme than High Priority Cases.

c. Low Priority Cases where there are no identifiable medical issues or
   COVID-19 risk factors.

d. Unknown Risk Cases where there is a lack of sufficient information
   to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization

. . . to the Clerk of Court and the Probation Office." Id.

## FACTUAL BACKGROUND

On May 21, 2018, Mr. Fox was sentenced to a term of imprisonment of

240 months and a term of 10 years of supervised release for his conviction for

enticement of a minor using the internet.  (Docket 71).  According to Mr. Fox's

presentence report ("PSR"), "[b]ased upon a total offense level of 43 and a

criminal history category of II, the guideline imprisonment range is life."

(Docket 64 at ¶ 72).  His statutory minimum sentence was a term of 10 years

and the maximum sentence was life.  Id. at ¶ 71.

Mr. Fox is currently an inmate at the United States Penitentiary in

Littleton, Colorado ("FCI Englewood").  (Docket 140).  According to the Bureau

of Prisons' ("BOP") website, Mr. Fox's release date is July 21, 2032.[2]

## MR. FOX'S CLASSIFICATION

On April 5, 2021, the FPD and the U.S. Attorney filed a notice of

categorization of compassionate release motion.  (Docket 76).  They jointly

"agree that this case should be categorized as a Low Priority case."  Id.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term

of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  In 2018,

---

[2]See Federal Bureau of Prison Inmate Locator, https://www.bop.gov/
mobile/find_inmate/byname.jsp#inmate_results.

Congress passed the First Step Act ("FSA"), which amended 18 U.S.C.
§ 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in
the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with
"extraordinary and compelling reasons" to leave prison early.  18 U.S.C.
§ 3582(c)(1)(A)(i).  Such a sentence must comply with the 18 U.S.C. § 3553(a)
sentencing factors and "applicable policy statements issued by the Sentencing
Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy
statement, which was adopted before the FSA, requires both "extraordinary
and compelling reasons" and that "the defendant is not a danger to the safety
of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."
U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018).  The inmate bears the
burden to establish that compassionate release is warranted.  United States v.
Jones, 836 F.3d 896, 899 (8th Cir. 2016).  The district court is not required to
investigate possible avenues for relief or to develop the record in support of a
motion.  United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling."
28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to
promulgate "the criteria to be applied and a list of specific" extraordinary and
compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing
Commission limited "extraordinary and compelling reasons" to four scenarios
which are the consideration of the defendant's (1) terminal illness,
(2) debilitating physical or mental health condition, (3) advanced age and

deteriorating health in combination with the amount of time served and

(4) compelling family circumstances.  Id.  There is a fifth catch-all category for

an "extraordinary and compelling reason other than, or in combination with,

the reasons described" as determined by the Director of the Bureau of Prisons.

U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since

December 2018 when FSA became law.[3]

As a result, district courts are left to determine whether the policy

statement of the Sentencing Commission that was in existence when the FSA

was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389,

2404 (2022) ("the First Step Act allows district courts to consider intervening

changes of law or fact in exercising their discretion to reduce a sentence

pursuant to the First Step Act").  The purpose of the First Step Act is to expand

the availability of compassionate release based on judicial findings of

extraordinary and compelling reasons without being restricted to those

categories identified by the Sentencing Commission or the rationale used by

the BOP before the passage of the First Step Act.  It is clear Congress wishes to

"[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district

courts to grant petitions "consistent with applicable policy statements" from

the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after

the defendant has "fully exhausted all administrative rights to appeal a failure

---

[3]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Mr. Fox satisfied the exhaustion requirement.  On February 1, 2021, Mr. Fox submitted a request for compassionate release to FCI Englewood's Warden. (Docket 77 at p. 78).  Mr. Fox stated he is "requesting to be considered for Compassionate Release due to the COVID-19 pandemic."  Id.  He stated he presently suffers from obesity and has recovered from COVID-19.  Id.  His request was denied on March 5, 2021.  Id. at pp. 79-80.

B. **Defendant's Motion for Compassionate Release**

Mr. Fox argues he "is among those with the highest risk of death or serious illness from COVID-I9."  (Docket 75 at p. 13).  Mr. Fox fails to argue what medical conditions make him high risk.

While it is true that COVID-19 appears to pose a particular risk for individuals with certain existing health conditions.  The Centers for Disease Control and Prevention ("CDC") updated its current understanding of these risks.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/needextra-precautions/people-with-medical-conditions.html.  The CDC identifies the following conditions as posing an increased risk of severe illness from COVID-19, including cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (a BMI of 30 or higher), type 2 diabetes, and several others.  See People with Certain Medical Conditions, Ctrs.

for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 22, 2021).  The CDC lists people who are over the age of 65 at high risk of getting very sick from COVID-19.  See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Feb. 9, 2023).

Mr. Fox claims he is obese; however, his medical records do not support that assertion.  (Docket 77 at p. 18).

Mr. Fox is 49 years old.  See Federal Bureau of Prisons' Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Feb. 7, 2023).

Mr. Fox's medical records indicate he was placed in isolation due to a positive test for COVID-19 on December 7, 2020.  (Docket 77 at pp. 51, 65).  He reported having no symptoms during his observation period.  Id. at pp. 55-56.  He was returned to the general population of the BOP facility on December 13, 2020.  Id. at p. 50.

Once an inmate "has already had COVID-19, there is little reason for [him] to be released early now."  United States v. Wieman, No. 4: 19-CR-40003-06, 2021 WL 425113, at *2 (D.S.D. Feb. 8, 2021).  Much is still unknown about COVID-19.  But according to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."  https://www.cdc.gov/coronavirus/

2019-ncov/your-health/reinfection.html (updated Sept. 9, 2022) (last visited

Feb. 8, 2023).

Against Mr. Fox's medical conditions, the court must weigh the steps the

BOP has undertaken to manage the spread of COVID-19 within its facilities

and to treat inmates who become infected.  The BOP has made significant

changes to correctional operations since the pandemic started in early 2020.

See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov

/coronavirus/ (last visited Feb. 6, 2023); see also www.bop.gov/coronavirus/

(BOP's "action plan" described in detail).  These include sanitary and safety

measures, restrictions on movement, and visitation restrictions, among others.

Id.  The BOP has also transferred thousands of inmates to home confinement.

Id.  These measures have led to a dramatic decrease in the total BOP

population, which in turn has increased opportunities for social distancing and

reduced the strain on BOP resources.

FCI Englewood houses 1,104 total inmates, and 970 inmates are

currently vaccinated.  See Fed. Bureau of Prisons FCI Englewood,

https://www.bop.gov/locations/institutions/eng/ (last visited Feb. 7, 2023).

Since the beginning of the pandemic, two inmates have died of COVID-19 and

405 inmates, including Mr. Fox, have recovered.  As of February 7, 2023, 970

inmates are currently vaccinated at FCI Englewood.  See COVID-19

Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last

visited Feb. 6, 2023).  The court is unaware if Mr. Fox was vaccinated for

COVID-19.

The court finds Mr. Fox's medical conditions are appropriately managed at FCI Englewood, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19 and the facility would act to treat any inmate who does contract COVID-19.

A generalized fear of COVID-19 cannot be a basis to grant compassionate release.  United States v. Gater, 857 F. Appx 259 (8th Cir. 2021) (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)) (explaining "the mere existence of COVID-19 in society and the possibility it may spread to a particular prison alone cannot independently justify compassionate release") (quoting United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021) (noting "[f]ear of COVID doesn't automatically entitle a prisoner to release" and affirming denial of compassionate release request to otherwise healthy defendant who had two, well-controlled, chronic medical conditions)).

Although not unsympathetic, the court does not find Mr. Fox's concern regarding COVID-19 to be an "extraordinary and compelling" reason that justifies compassionate release.

## C. 3553(a) Factors

The 3553(a) sentencing factors further show that compassionate release is not warranted.  These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      b.  to afford adequate deterrence to criminal conduct;

      c.  to protect the public from further crimes of the defendant; and

      d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

Mr. Fox pled guilty to enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b). (Docket 71). Mr. Fox's factual basis statement revealed that from May 1, 2014, to March 22, 2015, he repeatedly communicated with an eleven-year-old girl through social media. (Docket 64 at ¶ 5). On multiple occasions, Mr. Fox asked the girl to take her clothes off so he could see her naked and she complied. Mr. Fox also sent the girl images of his penis, and he masturbated in front of her. Additionally, between August 1, 2015, and December 31, 2015, Mr. Fox engaged in similar conduct with a sixteen-year-old, with similar requests. Mr. Fox had at least 10 nude photos of the victim on his cell phone. Id. at ¶ 6. To conclude with the obvious, Mr. Fox committed a serious felony offense involving minor victims. The nature and circumstances of this offense and Mr. Fox's behavior do not favor his motion.

Mr. Fox had a "total offense level of 43 and a criminal history category of II, the guideline imprisonment range is life." Id. at ¶ 72. His statutory minimum sentence was a term of 10 years and the maximum sentence was life. Id. at ¶ 72. Mr. Fox's sentence of 240 months was at the bottom of the guidelines range. (Dockets 115 at ¶¶ 62 and 121). Mr. Fox received an appropriate sentence. Reducing his sentence would produce a result that no

longer reflects the seriousness of Mr. Fox's criminal conduct.  A reduced

sentence would not furnish adequate deterrence to criminal conduct or provide

just punishment.

Mr. Fox admits his "case was admittedly serious[;]" however, he asserts

"with proper supervision, restrictions on computer usage, and mandated home-

confinement, [he] would pose little threat to the community and would be

unlikely to recividate [sic]."  (Docket 75 at p. 17).  The court disagrees.  The

court concludes Mr. Fox's sentence of 240 months continues to be appropriate

for the seriousness of the crime he committed.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket

75) is denied.

Dated March 31, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE